**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

MATTHEW PATRICK COUGHLIN,      )
                               )
                Petitioner,    )
                               )
vs.                            )      Case No. 10-CV-641-TCK-TLW
                               )
EDWARD EVANS, Interim Director,[1]   )
                               )
                Respondent.    )

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action commenced by Petitioner, a state inmate

appearing pro se. Before the Court is Petitioner's petition (Dkt. # 1) and supplement (Dkt. # 10).

Respondent filed a response (Dkt. # 12) to the petition and supplement, and provided the portions

of the state court record necessary for resolution of Petitioner's claims. See Dkt. ## 14, 15. Petitioner

filed a reply (Dkt. # 18).  For the reasons discussed below, the Court finds the petition for writ of

habeas corpus shall be denied.

## BACKGROUND

On June 11, 2007, Renee Tomlinson arrived at National Quick Cash on 11th and South

Sheridan in Tulsa, Oklahoma. This was her place of employment.  As she exited her car, a man

approached her and said he was there to rob her. He then lifted up his shirt and showed her, what

she thought to be, the butt of a gun. (Dkt. # 14-5 at 245).  As they approached the front door of the

Quick Cash, the man told her that "he had been following [her] for a while, that he knew [her]

_____

[1]Since Petitioner is incarcerated at Lawton Correctional Facility, a private prison, the proper
respondent in this case is Edward Evans, Interim Director of the Oklahoma Department of
Corrections.  See Rule 2, Rules Governing Section 2254 Cases. For that reason, the Court Clerk
shall be directed to substitute Edward Evans, Interim Director, in place of David C. Miller, Warden,
as party respondent in this matter.

routine, knew that [she had] just dropped [her] kids off at day care and [that she] had gone to QuickTrip and then to the store." Dkt. # 14-5 at 246:1-7. He also told her that he had "somebody sitting at [her] day care . . . watching [her] kids . . . and that if everything went okay then . . . nothing would happen to [her] kids." Id. at 246:11-15. As they approached the front door, the man told her that he knew there were two alarm codes, one for regular and one for distress, and that she better enter the "right one." Id. at 246:18-247:10.  Once inside the store and the non-distress code was entered, the man directed Ms. Tomlinson away from the cash drawers and to open the safe. The cash drawers were the location of the "panic buttons." After the man emptied the safe, he wanted Ms. Tomlinson to "get the video" from the security camera. Upon seeing there was no disc in the camera, the man directed Ms. Tomlinson into the back room. After a few moments, he closed the door and then left the building. Ms. Tomlinson called her husband and then her boss before pushing one of the panic buttons to set off the alarm. Id. at 253.

Detective Jeff Gatwood of the Tulsa Police Department investigated the robbery. The police recovered video and still photos from the National Quick Cash and sent a still photo of "a white male in the business around the safe area" to the television station for "a crime stoppers tip." Id. at 300-01. After the photo was shown, Detective Gatwood received a tip that mentioned the person seen was Matthew Coughlin (Coughlin or Petitioner). Id. at 301:17-20. Detective Gatwood obtained a warrant for Coughlin's arrest and, after being read his rights under Miranda,[2] Coughlin confessed to robbing the National Quick Cash.  Id. at 319.  On June 21, 2007, Coughlin was charged with Robbery With a Firearm in violation of OKLA. STAT. tit. 21 § 801 (Count 1) and Possession of Firearm After Former Conviction of a Felony in violation of OKLA. STAT. tit. 21 § 1283 (Count 2).

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

2

Petitioner was tried by a jury in Tulsa County District Court Case No. CF-2007-3356.[3] On May 8, 2008, after a three-stage trial, a jury found Petitioner guilty of Count 1 and not guilty of Count 2. Petitioner elected not to testify at his trial. On May 12, 2008, Petitioner was sentenced in accordance with the jury's recommendation to thirty-five (35) years imprisonment on Count 1. At trial, Petitioner was represented by attorneys Clay Ijams and Brian Rayl of the Tulsa County Public Defender's Office.

Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA) on August 7, 2008 (Case No. F-2008-466). Represented by attorneys Clay Ijams and Stuart Wayne Southerland, Petitioner raised three (3) propositions of error:

Proposition I:      Aggravation evidence is prohibited in a non-capital case with jury sentencing. Without objection, the state was permitted to offer and argue aggravation evidence, including victim impact testimony, to the jury.

Proposition II:     Matthew Coughlin's counsel was unconstitutionally ineffective.

Proposition III:    The court below abused its discretion when it remanded the case for preliminary hearing to establish four prior felony convictions.

See Dkt. # 1, Ex. 1. In an unpublished opinion, filed April 15, 2009, the OCCA rejected petitioners claims for relief and affirmed the Judgment and Sentence of the District Court. See Dkt. # 1, Ex. 4.

---

[3]Michelle Lynn Starkey, a former employee of National Quick Cash and Petitioner's temporary housemate, was also charged in Case No. CF-2007-3356.  On June 1, 2009, Starkey pled guilty to Accessory After the Fact and received a sentence of six years.  See www.oscn.net.

On July 9, 2010, Petitioner filed an application for post-conviction relief in state district court. (Dkt. # 1, Ex. 2 at 36[4]). On August 13, 2010, the court denied Petitioner's application (Dkt. # 1, Ex. 5). Petitioner appealed. On post-conviction appeal, Petitioner raised one (1) ground of error, as follows:

> Petitioner was denied effective counsel, where appellate counsel failed to raise on direct appeals trial counsel's deficiency for not challenging Petitioner's prior conviction in Case No. CF-1997-3541, as being infirm for punishment enhancement because Petitioner was denied counsel during critical stages in that prior conviction, resulting in Petitioner being also denied his right to appeal from said prior conviction through no fault of the Petitioner.

(Dkt. # 1, Ex. 2).  By order filed November 12, 2010, the OCCA affirmed the district court's denial of post-conviction relief. (Dkt. # 10, Ex. 1).

Petitioner filed this federal habeas corpus petition on October 8, 2010 (Dkt. # 1). In it, he raised four (4) grounds of error, as follows:

| | |
|---|---|
| Ground One: | Petitioner was denied due process and a fair trial - Aggravation evidence is prohibited in a non-capital case with jury sentencing. Without objections, the State was permitted to offer and argue aggravation evidence, including victim impact testimony, to the jury. |
| Ground Two: | Petitioner's trial counsel was unconstitutionally ineffective. |
| Ground Three: | Petitioner was denied due process and a fair trial. The trial court abused its discretion when, on the eve of trial, it remanded the case for preliminary hearing to establish four prior felony convictions. |
| Ground Four: | Petitioner was denied effective counsel, where appellate counsel failed to raise on direct appeal trial counsel's deficiency for not challenging Petitioner's prior conviction in |

---

[4]The petition includes seven exhibits.  These exhibits are attached to the petition and filed as one document. Therefore, the page numbers referenced herein are the CM/ECF page numbers and not the individual page numbers on each respective exhibit.

4

Case No. CF-1997-3541, as being infirm for punishment enhancement because Petitioner was denied counsel during critical stages in that prior conviction, resulting in Petitioner being also denied his statutory right to appeal from said prior conviction through no fault of the Petitioner.

(Dkt. # 1). Because Ground Four was pending before the OCCA at the time of filing, Petitioner filed a supplement (Dkt. # 10) after the OCCA entered its order affirming denial of Petitioner's request for post-conviction relief. In response to the petition, Respondent argues that Ground One and Ground Three are matters of state law not cognizable on habeas review and that the OCCA's determination that trial counsel and appellate counsel were not ineffective is not contrary to or an unreasonable application of federal law. (Dkt. # 12).

## ANALYSIS

### A.     Exhaustion/Evidentiary hearing

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner fairly presented the substance of his claims to the OCCA on direct and post-conviction appeal.  Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000).

### B.     Claims adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state's decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). The AEDPA standard is "highly deferential . . . [and] demands that state court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (quoting Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997)).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

To the extent Petitioner's claims are cognizable in this federal habeas corpus proceeding, the claims shall be reviewed pursuant to § 2254(d).

### 1.    Denial of due process and a fair trial - improper presentation of aggravation evidence in a non-capital case (Ground One)

In Ground One, Petitioner alleges that aggravation evidence was improperly submitted to the jury during the sentencing stage of his trial in violation of Oklahoma law. (Dkt. # 1, Ex. 1 at 23-28). The OCCA denied relief on this claim stating that "neither evidence in aggravation nor victim impact evidence were admitted during any stage of the trial." See Dkt. # 1, Ex. 4. Respondent argues that since this is a matter of state law, the Court should decline to "entertain" the Ground for relief. (Dkt. # 12).

6

A federal habeas court has no authority to review a state court's interpretation or application of its own state laws.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state court determinations on state-law questions). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975)); see also Shipley v. Oklahoma, 313 F.3d 1249 (10th Cir. 2002) (stating that federal habeas review does not extend to the correction of purely state law procedural errors that do not rise to the level of a constitutional due process violation). To the extent Petitioner claims violations of the Oklahoma Constitution or Oklahoma statutory law, those claims are denied because they are not cognizable on federal habeas corpus review. However, this Court will review Ground One to determine whether Petitioner was denied due process and a fair trial.

Petitioner argues that the State was improperly allowed to present aggravation evidence and victim impact testimony to the jury in a non-capital case. Petitioner specifically references four types of improper testimony to support his argument that the State "was almost entirely concerned with arguing the facts in aggravation." See Dkt. # 1, Ex. 1 at 23-24, 27.  Petitioner argues that the "statements with regard to Ms. Tomlinson's children's day care were above and beyond the essential constituent of the force or fear element of robbery." Id., Ex. 1 at 28. He states that the State went further and "exaggerated Ms. Tomlinson's testimony of nightmares" during the sentencing phase of the trial. Id.  Respondent counters by stating that the testimony of "threats to Ms. Tomlinson's children and showing her the gun were part of the entire robbery and . . . the means through which Petitioner instilled fear in Ms. Tomlinson sufficient . . . to prove Petitioner committed the robbery using fear as required by the statute." (Dkt. # 12 at 9-10).  Respondent further argues that the OCCA

rejected Petitioner's argument by stating that "[t]his claim is based on [Petitioner]'s mistaken characterization of the State's evidence as evidence in aggravation. The State properly argued from the evidence, as it is permitted to do, that jurors could find all elements of the crime beyond a reasonable doubt." Id. at 14 (quoting Coughlin v. Oklahoma, No. F-2008-466 (Okla. Crim. App. Apr. 15, 2008)).

This Court conducted a review of the record and considered the arguments raised by Petitioner. Based on the record in the totality of the circumstances, the Court finds that the OCCA did not err in its consideration of Ground One. The State did not introduce any new evidence to the jury during closing arguments or during the sentencing stage. The statements relating to the "fear" of Ms. Tomlinson were based on her own testimony during the first stage of Petitioner's trial and not an introduction of new information during Stage 2 and Stage 3. The Court does not find any due process violations nor did the actions by the State result in an unfair trial. Accordingly, habeas relief is denied on Ground One.

### 2.      Ineffective assistance of trial counsel (Ground Two)

Ground Two raises claims for ineffective trial counsel. (Dkt. # 1). Contained within this Ground, are ten instances where Petitioner claims counsel was ineffective. Id., Ex 1 at 29.  The same ten instances were raised on direct appeal.  The OCCA considered and denied relief based on one of three reasons: (1) its disposition of Proposition I (the same as Ground One herein); (2) the fact that Petitioner "completely fail[ed] to show he was prejudiced"; or, (3)  that the record did not support the claim. Id., Ex. 4 at 52-53. Respondent contends that the OCCA's determination was in conformity with Strickland v. Washington, 266 U.S. 668 (1984), and not contrary to or an unreasonable application of federal law. (Dkt. # 12).

8

Petitioner cited ten (10) specific instances or categories where he says trial counsel was ineffective. They are as follows:

1.      Failing to object to the victim impact testimony of Ms. Tomlinson. Dkt. # 14-5 at 257. Even in a capital trial, such evidence would be inadmissible in the guilt/innocence stage of the trial. However, in a non-capital trial, such evidence is never admissible.

2.      Counsel's apology to Ms. Tomlinson that cross examination was "just my job as representing Matthew." Dkt. # 14-5 at 269.

3.      Failing to object when Detective Gatwood told the jury that a crime stopper said that Matthew Coughlin committed the robbery. The crime stopper had not testified, and did not testify. Dkt. # 14-5 at 301. This was inadmissible hearsay and violated Matthew Coughlin's right of Confrontation.

4.      Failing to object when Detective Gatwood told the jury that Cara Johnson had told him that Matthew Coughlin had lived with Michelle Starkey (the disgruntled employee) Dkt. # 14-5 at 308. This was inadmissible hearsay and violated Matthew Coughlin's right of Confrontation.

5.      Failing to object when Detective Gatwood stated that after he got the crime stopper tip about Matthew Coughlin being the robber he went to the "Department of Corrections Web site because [the crime stopper] mentioned that . . . ." Dkt. # 14-5 at 301. It was the Judge who intervened (a little too late) to protect Matthew Coughlin's rights in this instance. Id. Such evidence of prior involvement with the prison system from a 16-year veteran of the police force, Dkt. # 14-5 at 296, was an inadmissible evidentiary harpoon.

6.      Failing to object when Detective Gatwood gave his opinion that Matthew Coughlin was minimizing his involvement when he confessed to detective Gatwood. Dkt # 14-5 at 322. Such nonexpert opinion testimony was improper.

7.      Informing the State before closing arguments that the defense's strategy was to concede guilt as to robbery by force or fear. Dkt. # 14-5 at 355. Counsel could have made their record ex-parte or after closing arguments.

8.      Arguing in the guilt/innocence stage that "Matthew had enough moral sense to not betray [Michelle Starkey]" by denying that Michelle Starkey was involved when he spoke with Detective Gatwood.

9.      Failing to object when the State moved to incorporate all the evidence from the merits portion of Count 1 and Count 2 into the sentencing portion of the trial. Dkt. # 14-5 at 405. Counsel should have objected to the incorporation of the beyond-the-elements aggravating evidence, and victim impact evidence. Counsel also incorporated evidence of another prior felony conviction of Appellant to support the Possession of a Firearm AFCF charge that was inadmissible as a prior for sentencing purposes. Dkt. # 14-5 at 390.

10.     Failing to object to the State's improper aggravation evidence during closing arguments.

(Dkt. # 1). The OCCA, citing, inter alia, Strickland, determined that, (1) three of the categories "depend[ed] in whole or in part on [its] resolution of Proposition I," (2) four categories where "counsel should have objected to certain portions of police testimony . . . fail to show [Coughlin] was prejudiced by counsel's lack of objection," and (3) three categories claiming "counsel should have refrained from certain statements or argument[s]" also "fail[ed] to show [Coughlin] was prejudiced by counsel's acts or omissions." (Dkt. # 1, Ex. 4).  Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim unless he demonstrates that the OCCA's adjudication resulted in an unreasonable application of Strickland.

Under the familiar constitutional standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), Petitioner must demonstrate that his counsel's performance was deficient and that the deficient performance was prejudicial. Id. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). Petitioner must establish the first prong by showing that his counsel performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88.  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 689.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t

10

is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. Assessing attorney performance requires every effort to avoid hindsight bias and evaluate conduct from counsel's perspective at the time. Id. "Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial." Harrington v. Richter, 131 S. Ct. 770, 791 (2011) (quoting Strickland, 466 U.S. at 686). "The Strickland standard must be applied with 'scrupulous care.'" Cullen v. Pinholster, 131 S. Ct. 1388, 1408 (2011) (quoting Richter, 131 S. Ct. at 788). As noted in Richter, "[e]ven under de novo review, the standard for judging counsel's representation is a most deferential one." Richter, 131 S. Ct. at 788.

To establish the second prong, Petitioner must show that this deficient performance prejudiced the defense to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Houchin v. Zavaras, 107 F.3d 1465, 1472 (10th Cir. 1997). Failure to establish either prong of the Strickland standard will result in denial of relief. The Court does not need to address the two prongs of Strickland in "any particular order." Strickland, 466 U.S. at 697 ("there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components . . . if the defendant makes and insufficient showing on one"); see also Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999).

Three of the ten categories identified by Petitioner, are based on the Ground One claim resolved supra – Category 1 (failing to object to victim impact testimony by Ms. Tomlinson),

Category 9 (failing to object when incorporating evidence into the sentencing stage from the prior two stages of the trial), and Category 10 (failing to object to aggravation evidence). The claim under Category 1 is without merit. The Court concluded above, that the testimony of Ms. Tomlinson was not victim impact testimony, but was in fact testimony necessary for the State to meet its burden of proof for Count 1. As to Category 10, the Court determined above, that the State did not present aggravation evidence during closing arguments. This claim is without merit.

Category 9 is discussed separately because there are two separate claims within the same category. The first claim in Category 9 is misplaced. Petitioner claims that counsel failed "to object when the State moved to incorporate all the evidence from the merits portion of Count 1 and Count 2 into the sentencing portion of the trial." (Dkt. # 1, Ex. 1 at 30). Though Petitioner believes his counsel failed to object, there were in fact several objections made by counsel regarding the evidence and each was overruled by the trial court.[5] Yet, an examination of the transcript reveals that the district court specifically noted and adopted all of defense counsel's previous objections to the evidence from Stage 1 and Stage 2 prior to incorporating all of the evidence from Stage 1 and 2 into the sentencing phase (Stage 3) of the trial. (Dkt. # 14-5 at 404-05). Thus, this claim is not supported by the record.

The second part of Category 9, is a claim of failing to object to "another prior felony conviction . . .[used] to support the Possession of a Firearm [After Former Conviction of two or

---

[5]The objections raised by defense counsel during Stage 1 and Stage 2 of the trial are as follows: (1) objection during preliminary hearing to amend the second page of the Information (Dkt. # 14-1 at 10); (2) continuing objection to the remand in order to allow amendment to the second page of the Information (Dkt. # 14-4 at 3); (2) objection to the in-court identification of defendant by Ms. Tomlinson (Dkt. # 14-5 at 264-66, 274-75); and (3) objection to Ms. Tomlinson stating "[t]here was no need to involve my children" during direct examination (Dkt. # 14-5 at 275).

more Felonies (AFCF)] charge that was inadmissible as a prior for sentencing purposes." (Dkt. # 1, Ex. 1). Petitioner cites to a section of the transcript covering the testimony of Detective Gatwood during Stage Two of Petitioner's trial. Id. On direct, the State asked Detective Gatwood whether Petitioner ever admitted to being convicted of a felony and if so, what felony. Detective Gatwood responded in the affirmative and stated that Petitioner admitted to being convicted of "[p]ossession of a controlled substance with intent to distribute." (Dkt. # 14-5 at 390). The defense did not raise any objections nor conduct a cross-examination. Id. at 390-91. In denying Petitioner's direct appeal, the OCCA found that "[i]nsofar as [Petitioner] may be claiming that one of the alleged prior convictions would not support an enhanced sentence, the record does not support the claim." (Dkt. # 1, Ex. 4). This Court agrees. First, the Petitioner filed a motion to quash prior convictions that were transactional to the possession of a controlled substance. The trial court conducted a hearing and granted that motion. That hearing provided Petitioner an opportunity to raise the sufficiency of the possession conviction. Additionally, Petitioner had a second preliminary hearing to address prior convictions for purposes of the AFCF component of the pending charges. The only prior conviction to which the defense objected was a conviction entered in California, discussed infra Ground Three. Petitioner has not shown how defense counsel's actions were deficient and fell below the standard of a reasonably competent attorney at a criminal trial.

Four of Petitioner's categories claim trial counsel failed to object during the testimony of Detective Gatwood of the Tulsa Police Department – Category 3 (crime stopper tip was hearsay testimony), Category 4 (hearsay testimony from police interview), Category 5 (partial mention of Department of Corrections website during testimony), and Category 6 (improper non-expert testimony). The OCCA found that Petitioner failed to show how he was prejudiced by these claims

and declined to examine whether counsel performed below the level expected from a reasonably competent attorney in criminal cases. This Court finds that Petitioner has failed to satisfy the prejudice prong of <u>Strickland</u>. Petitioner does not demonstrate that, had trial counsel objected to these four parts of Detective Gatwood's testimony, the results of his trial would have been different.

The final three categories in Petitioner's Ground Two claim are complaints against additional statements or acts by trial counsel – Category 2 (counsel's apology to Ms. Tomlinson prior to cross examination), Category 7 (counsel informing the State of defense's strategy prior to closing arguments), and Category 8 (arguing during the guilt/innocence stage that Petitioner "had enough moral sense" in denying that his co-defendant, Michelle Starkey, was involved when Petitioner spoke to Detective Gatwood). (Dkt. # 1, Ex. 1). The OCCA again found that Petitioner failed to show how he was prejudiced by these statements or acts. (Dkt. # 1, Ex. 4). This Court agrees. Defense counsel's "apology" to Ms. Tomlinson falls into a category of statements that are commonly used prior to cross-examination of victims when the victim is testifying at a criminal trial before a jury. Petitioner did not show how this statement prejudiced him at trial. Petitioner also fails to demonstrate how the statement made by counsel regarding the "defense's strategy" prior to closing arguments prejudiced him at trial. First, this statement was made to the court outside of the presence of the jury.[6] Second, this statement came after the conclusion of the state's case and after a denial of defense counsel's general demurrer. Finally, the trial judge told both the State and defense that an additional instruction for second degree robbery would be given based on the

---

[6] The jury was dismissed from the courtroom before the statement was made by defense counsel. <u>See</u> Dkt. 14-5 at 345. Thereafter, the referenced exchange between defense counsel and the prosecution took place. <u>Id.</u> at 355. The jury reenters the courtroom at 356.

evidence presented by the State and if Petitioner did not testify. (Dkt. # 14-5 at 340).[7]  After additional consultation with his attorneys, Petitioner decided not to testify. It was not a secret that the defense strategy was to seek second degree robbery instruction. Petitioner was not prejudiced.

In category 8, Petitioner claims his counsel was ineffective when, during closing arguments in Stage 1, he said, "Matthew had enough moral sense to not betray [Michelle Starkey]." (Dkt. # 1, Ex. 1); see also Dkt. # 14-5 at 372:13-14.  However, Petitioner also states that "[a]s it pertains to the guilt/innocence stage, the ineffective assistance of counsel did not prejudice Matthew Coughlin as the evidence was strong enough . . . that the evidence of guilt was overwhelming." (Dkt. # 1, Ex. 1 at 31). The statement referencing Michelle Starkey occurred during closing arguments in the guilt/innocence stage of Stage 1 of the trial. Petitioner's own argument counters his claim of ineffective assistance of counsel in Category 8.  Even construed broadly, this particular claim has no merit because Petitioner again fails to show how he was prejudiced by this statement and in fact argues he was not prejudiced by it.

---

[7]The exchange between defense counsel and the trial judge, in the presence of the State's attorney was as follows:

| Mr. Rayl: | Just so we have this on the record I told him [Petitioner] that if he did not testify right now the Court had indicated that they would instruct the jury on second degree robbery, and that did affect his decision so . . . |
|---|---|
| The Court: | Yes. Based on the evidence that I have heard and your request for the lesser included instruction, the Court will be instructing on the lesser included of robbery in the second degree as to Count 1. Sir, what is your decision at this time? |
| Mr. Coughlin: | To not do it. |

(Dkt. # 14-5 at 340).

Thus, after careful review, Petitioner fails to show he was prejudiced by ineffective assistance of counsel during his trial. Petitioner does not demonstrate how the outcome of his trial would be different had trial counsel not performed deficiently, as alleged by Petitioner.  Petitioner has failed to demonstrate that the OCCA's adjudication of his claim was contrary to <u>Strickland</u>. Accordingly, habeas relief is denied on Ground Two.

**3.      Denial of due process and fair trial – improper remand for new preliminary hearing on the eve of the trial (Ground Three)**

In Ground Three, Petitioner claims he was "denied due process and a fair trial [after] [t]he trial court abused its discretion when, on the eve of trial, it remanded the case for preliminary hearing to establish four prior felony convictions." (Dkt. # 1). Petitioner states that after the trial court granted his motion to strike one of "the priors on the second page [as] transactional," the court granted the State's motion to remand the case for a preliminary hearing regarding a 1992 conviction in California. (Dkt. # 1, Ex. 1). Petitioner argues that the State failed to show that it "was not dilatory in attaining the evidence" and that it failed to show "the evidence could not have been easily acquired." <u>Id.</u> (citing <u>Jones v. State</u>, 481 P.2d 169 (Okla. Crim. App. 1971)). The OCCA denied relief on this claim, stating "the trial court did not abuse its discretion." (Dkt. # 1, Ex. 4). The OCCA relied, inter alia, on <u>Louder v. State</u>, 568 P.2d 344 (Okla. Crim. App. 1977) and found that "[t]he record support[ed] the trial court's conclusion that the State did not have the information about [the] California conviction at the time of the first preliminary hearing, and that information could not be easily acquired." (Dkt. # 1, Ex. 4 at 53 n.6).  Respondent argues that the trial court properly complied with the "procedure approved" in <u>Louder</u> and that "Petitioner suffered no prejudice from the additional preliminary hearing." (Dkt. # 12).

16

In Louder v. State, one of the assignments of error before the OCCA was whether the trial court "followed proper procedure in remanding" for a further preliminary hearing. Louder, 568 P.2d at 347.  The court determined that remanding a case for "the limited purpose of producing evidence of prior convictions would seem to be the most practical method of giving the defendant an opportunity to be apprised of and question the validity of the former convictions . . . ." Id. at 348. Furthermore, "[i]t would be an effort in futility to require the State to commence a new preliminary hearing and offer evidence as if a preliminary hearing had never been conducted." Id. The OCCA determined this procedure to also be in spirit with the Oklahoma Constitution, which states that "[n]o person shall be prosecuted for a felony by information without having had an preliminary examination . . . ." OKLA. CONST., art. II, § 17.  In order for the court to grant a second preliminary hearing, "the State [must] clearly show that it has acquired 'new' evidence." Chase v. State, 517 P.2d 1142 (Okla. Crim. App. 1973) (citing Jones v. State, 481 P.2d 169 (Okla. Crim. App. 1971)).

Generally, a decision by a trial court to remand comes within the purview of the state court's interpretation or application of its own state laws. In conducting a habeas review, the federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Estelle, 502 U.S. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975)); see also Shipley v. Oklahoma, 313 F.3d 1249 (10th Cir. 2002) (stating that federal habeas review does not extend to the correction of purely state law procedural errors that do not rise to the level of a constitutional due process violation).  Therefore, this Court will review Ground Three to determine whether Petitioner received due process and a fair trial.

Prior to trial, Petitioner filed a motion to quash and strike Paragraph 1 or 2 on the second page of the Information as transactional. (Dkt. # 14-1).  The court granted Petitioner's motion to

quash and allowed the State to only use one of the two paragraphs. Id. at 8. After the court ruled in favor of Petitioner, the State revealed that a previous conviction in California came to light during preparation for the motion to quash hearing. Id. The State argued that the California case was not easily discoverable because it was on microfilm, there were no mentions of this conviction in prior judgments and sentences, and it was only discovered after reading police reports. Id. at 10:8-17. The trial court, satisfied that this was "newly discovered evidence" and over Petitioner's objection, granted the State's request for a remand for a second preliminary hearing. Id. at 10.

After a review of the record, the Court finds that Petitioner was not deprived of his right to a fair trial and due process. Furthermore, Petitioner fails to demonstrate how he was prejudiced by the second preliminary hearing. The record shows that the second preliminary hearing took place two days after the trial court's remand. Additionally, Petitioner was granted a continuance a few days later when he received new counsel after the second preliminary hearing. See Order for Continuance, State v. Coughlin, No. CF-2007-3356 (Tulsa County Dist. Ct. Apr. 7, 2008); and Dkt. # 12 at 16-17. The actions by the state court did not deprive Petitioner of a fair trial and his right to due process. Therefore, habeas relief on Ground Three is denied.

**4.      Ineffective assistance of appellate counsel (Ground Four)**

In Ground Four, Petitioner contends he was denied effective appellate counsel on direct appeal because his "appellate counsel failed to raise on direct appeal trial counsel's deficiency for not challenging Petitioner's prior conviction in Case No. CF-1997-3541, as being infirm for punishment enhancement . . . ." (Dkt. # 1). Petitioner asserts that he directed his appellate counsel to include a claim that "his prior convictions were infirm for enhancement purposes because Petitioner did not have the benefit of counsel during every critical stage in his prior convictions

18

which resulted in his being denied his right to appeal through no fault of his own." (Dkt. # 1, Ex. 2 at 38). Petitioner raised this claim on post-conviction appeal.  However, the OCCA affirmed the denial of post-conviction relief (Dkt. # 10, Ex. 1) because it found that Petitioner's appellate counsel did in fact raise Petitioner's issue on direct appeal and that Petitioner failed to show "error in the District Court having found that the issues he raises on post-conviction were all issues previously raised in his direct appeal."  Id.  Respondent echoes the OCCA and argues that "appellate counsel was not ineffective since he did raise the complained of issue in Petitioner's direct appeal." (Dkt. # 12 at 25).

Petitioner urges the Court to exercise de novo review and not give "AEDPA deference to the [s]tate [c]ourt's erroneous findings of fact . . . and conclusions of law." (Dkt. # 18 at 5) (citing Valdez v. Bravo, 373 F.3d 1093, 1096 (10th Cir. 2004)). Even though the OCCA does not specifically apply federal law to the facts of the case, the OCCA's decision must be upheld unless an independent review of the record and pertinent federal law leads to the conclusion that the OCCA's result "contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." Aycox v. Lytle, 196 F.3d 1174, 1178 (10th Cir. 1999). After careful review of the record, this Court finds that the OCCA's analysis was an adjudication on the merits for purposes of § 2254(d) and as such, gives deference to the OCCA's decision. See Harrington v. Richter, 131 S. Ct. 770, 784 (2011); Aycox, 196 F.3d at 1177.  The Court finds no misapplication of federal law and that the conclusion reached by the OCCA was reasonable.  Petitioner failed to meet his burden on his post-conviction appeal before the state court. The OCCA's analysis expressly states that Petitioner "could have

demonstrated" error in the District Court's denial of post-conviction relief by "demonstrating the precise issues raises by his appellate counsel." (Dkt. # 10, Ex. 1). However, he failed to do so.

"The Strickland test also applies to assessing the effectiveness of appellate counsel." Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999). When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Id. The Tenth Circuit has explained that,

> If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (footnote omitted) (citation omitted); see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998). The OCCA denied post-conviction relief, finding that Petitioner's claim was raised on direct appeal. (Dkt. # 10, Ex. 1). The record before the Court does not contradict this finding. Therefore, this omitted issue is not meritorious. Furthermore, the OCCA's determination does not conflict with the Strickland standard as Petitioner failed to show how appellate counsel performed below the level expected from a reasonably competent attorney in criminal cases or how he was prejudiced by the actions of his attorneys. As such, the OCCA's denial of post-conviction relief is not "a decision that [is] contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d). Petitioner's request for habeas relief on Ground Four is denied.

C.      **Certificate of Appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253(c), the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." "Under the controlling standard, a petitioner must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983))).

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decisions by the OCCA was debatable amongst jurists of reason.  See Dockins v. Hines, 374 F.3d 935 (10th Cir. 2004).

**CONCLUSION**

After carefully reviewing the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. The petition for a writ of habeas corpus is denied.

21

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.      The Court Clerk shall **substitute** Edward Evans, Interim Director, as the proper Respondent

in this matter.

2.      The petition for a writ of habeas corpus (Dkt. #1) is **denied**.

3.      A separate judgment shall be entered in this matter.

4.      A certificate of appealability is **denied**.

**DATED** this 15th day of October, 2013.

**TERENCE KERN**
**United States District Judge**